# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SHERI JENKINS, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-09-500-SPS
 )
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
 )
        Defendant. )

## OPINION AND ORDER

The claimant Sheri Jenkins requests review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her benefits under the Social Security Act pursuant to 42 U.S.C. § 405(g). The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erroneously determined that she was not disabled. As set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 12, 1959, and was forty-seven years old at the time of the administrative hearing (Tr. 80). She completed the tenth grade and the requirements for a GED (Tr. 26) and has worked as a receiving clerk in a grocery store (Tr. 95). The claimant alleges inability to work since May 1, 2005, (Tr. 80) because of fibromyalgia, depression, and anxiety (Tr. 103).

## Procedural History

On February 6, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 12). The Commissioner denied her application. ALJ Lantz McClain conducted the administrative hearing and found that the claimant was not disabled in a written opinion dated July 26, 2007. (Tr. 10-19). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation, finding that the claimant had the residual functional capacity ("RFC") to perform light work (Tr. 16). The ALJ concluded that although the claimant was unable to perform her past relevant

work, she was nevertheless not disabled because application of "the grids," *i. e.*, Medical Vocational Rule 202.18, allowed him to conclude that there were a significant number of light jobs the claimant could perform given her age, education, work experience, and RFC (Tr. 20).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the opinion of her treating physician, Dr. Katrina Joslin; (ii) by failing to properly evaluate her own credibility; and (iii) by improperly applying the grids at step five. Because the ALJ did fail to properly evaluate Dr. Joslin's opinion, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The record reveals that the claimant began receiving treatment from Dr. Katrina Joslin in September 2004. The claimant initially presented with complaints of worsening pain in her distal interphalangeal joints, and stated that at times, they were so painful that she had trouble gripping a steering wheel (Tr. 206). She reported that she slept with heated rice bags on her arms in an effort to relieve nagging, constant aches (Tr. 206). At that initial visit, Dr. Joslin's impressions were that claimant suffered from arthritis, a hiatal hernia, and generalized fatigue and weakness (Tr. 207). In March 2005, Dr. Joslin wrote that claimant's complaints of generalized achiness could be fibromyalgia (Tr. 205). By September 2005, Dr. Joslin noted that claimant reported that she was unable to function at work even with a reduction in hours, and her impression was that the claimant's achiness was due to fibromyalgia (Tr. 203). Claimant was prescribed naprilan

and plaquenil at that time (Tr. 203). Dr. Joslin's treatment records also reveal that claimant complained that her skin hurt with even light touches (Tr. 200), she was afraid to drive because it was hard for her to grip the steering wheel (Tr. 201), and she had tender points in her knees, hips, and elbows (Tr. 201).

Dr. Joslin also completed a Physical Capacities Evaluation on October 13, 2006, in which she found that claimant could occasionally lift up to 20 pounds, carry up to 10 pounds occasionally, and that, in an eight hour workday, claimant could sit for three hours, stand for two hours, and walk for two hours (Tr. 199). She also wrote that claimant "intermittently cannot do anything – good and bad days" and that claimant "drops things a lot" due to decreased grip strength (Tr. 199). Dr. Joslin opined that claimant's physical impairments prevented her from engaging in any work on a sustained basis (Tr. 200).

Medical opinions from a treating physician are entitled to controlling weight if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors

provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

Medical opinions from a non-treating physician are not entitled to the same deference as those of a treating physician. But the ALJ must determine the proper weight to give such opinions by considering the factors set forth in 20 C.F.R. § 416.927(d). *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. § [416.927(d)], although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in

determining what weight to give *any* medical opinion.") [emphasis added], *citing Goatcher v. Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ rejected the opinions expressed by Dr. Joslin in the Physical Capacities Evaluation because: (i) they conflicted with Dr. Joslin's own treatment records and were inconsistent with other medical evidence of record; and, (ii) some of Dr. Joslin's findings were on issues reserved to the Commissioner, *e. g.*, that claimant was not capable of performing any work on a sustained basis (Tr. 18). On the latter point, while it is true that the question of the claimant's ability to work is reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(2) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), this was not all Dr. Joslin had to say, *i. e.*, her opinions also addressed the claimant's functional limitations. In any event, the ALJ may not simply disregard even an opinion as to the claimant's ability to work when it comes from a treating physician. *See, e. g., Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("'[T]he [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.'"), *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3.

Further, although inconsistency with other medical evidence might support refusal to give controlling weight to a treating physician's opinions, the ALJ failed to specify the medical evidence that was inconsistent with Dr. Joslin's opinions, *see, e. g., Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed

inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300, other than his reference to Dr. Joslin's treatment notes, which do not appear to be entirely inconsistent with her opinions as to the claimant's functional limitations. For example, Dr. Joslin consistently noted that claimant had sore spots in her fingers, toes, forearms, knees, elbows, and shoulders (Tr. 201-05). In a letter that went unmentioned by the ALJ and dated May 25, 2007, Dr. Joslin noted that claimant met the diagnostic criteria for fibromyalgia, as evidenced by pain in the bilateral supraspinatus tendons, bilateral trapezius muscles of the neck and back, bilateral epicondyles, bilateral trochanteric bursas, and right medlar fat pad of the knee (Tr. 226). Dr. Joslin had also documented "simultaneous numbness, tingling, fatigue, poor sleep and history of headaches that are all compatible with fibromyalgia" (Tr. 226). At a minimum, the ALJ should have discussed this probative evidence before concluding that Dr. Joslin's treatment notes did not support her medical opinions. *See, e. g.*, *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted]. *See also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Even if Dr. Joslin's opinions regarding the claimant's functional limitations *were not* entitled to controlling weight, the ALJ was required to analyze the proper weight to give them by applying all of the factors in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927. *See, e. g., Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300; *Miller,* 43 Fed. Appx. at 204 ("An ALJ is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."), *quoting* Soc. Sec. Rul. 96-5p. This was important to do here because the ALJ opted for the opinions of the state agency physicians over those of Dr. Joslin but provided no explanation his preference. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."); *Reid v. Chater,* 71 F.3d 372, 374 (10th Cir. 1995) ("A treating physician's

opinion is favored over an opinion offered by a consulting physician."), *citing Talbot v. Heckler,* 814 F.2d 1456, 1463 (10th Cir. 1987).

Because the ALJ failed to properly analyze the medical opinions expressed by Dr. Joslin in the Physical Capacities Evaluation, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the ruling of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma